HENRY R. GORDON, as Administrator de bonis non with the Will Annexed of CUTHBERT C. GORDON, Deceased, Respondent, *v.* JOSHUA M. VAN COTT, JR., and Others, as Executors, etc., of JOSHUA M. VAN COTT, Deceased, Appellants.

*Judgment in an action in which a set-off is used merely to defeat a claim — it is not a bar to an action to recover the excess of the set-off over the claim of the plaintiff in the first action.*

A defendant who, in the use of a set-off or counterclaim interposed by him, is necessarily confined to the defeat of the plaintiff's demand, and is not permitted to obtain an affirmative judgment, is entitled to split such set-off or counterclaim, and his recovery only extinguishes his set-off or counterclaim to the amount of the plaintiff's demand.

Where, in an action brought to recover moneys collected by the defendant, the latter interposes a counterclaim exceeding the amount claimed by the plaintiff, a judgment rendered in such action in favor of the defendant, which recites that the court had "instructed the jury that if they found that the defendant was entitled to the same amount as, or a greater amount than, that claimed by the plaintiff in his complaint from the defendant, they must render a general verdict for the defendant; and \* \* \* that the defendant was not entitled to recover in this action from the plaintiff a sum greater than the amount of the funds in the defendant's hands on which he claims a lien," and that the jury had rendered a general verdict for the defendant, is not a bar to the assertion of such counterclaim in a subsequent action by the same plaintiff against the same defendant.

APPEAL by the defendants, Joshua M. Van Cott, Jr., and others, as executors, etc., of Joshua M. Van Cott, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Orange on the 9th day of June, 1898, upon the decision of the court, rendered after a trial at the Orange Special Term, dismissing the counterclaim set forth in the defendants' answer

*Frederic A. Ward,* for the appellants.

*Charles F. Brown,* for the respondent.

WOODWARD, J.:

This action was brought to recover the sum of $970.66 which had been collected by Joshua M. Van Cott, the defendants' testator, under and pursuant to an agreement made in settlement of a controversy over the will of George P. Gordon, the details of which are not material to this appeal. The receipt of the sum named was

admitted, and the defendants pleaded a counterclaim for services rendered by Mr. Van Cott to the estate of Cuthbert C. Gordon, deceased, upon which there was alleged to be due the defendants $450.46, for which judgment was demanded against the plaintiff. The reply denied the counterclaim, and, as a separate defense, alleged that in the year 1892 the plaintiff, as administrator, etc., of Cuthbert C. Gordon, deceased, had sued Mr. Van Cott in the City Court of Brooklyn to recover a sum of money which Van Cott had collected and received under the agreement attached to the complaint, and that, as a separate defense to that action, and as a counterclaim, Van Cott had pleaded a counterclaim for the same service for which the defendants seek to recover in this action. In the trial of the said action in the City Court of Brooklyn, Mr. Van Cott recovered for said services upon said counterclaim, so the plaintiff alleges, an amount equal to the sum claimed and admitted by the answer in that action to be due the plaintiff; that on December 13, 1892, judgment was entered in said action in favor of Mr. Van Cott and against the plaintiff for $202.75, costs of said action, which judgment was thereafter paid; that said judgment has never been reversed, and is a bar to the prosecution by the defendants of any claim for services rendered by Mr. Van Cott to the estate of Cuthbert C. Gordon. On the trial the facts were stipulated, and the trial court held that the judgment in the City Court action was a bar to the maintenance in this action of the aforesaid counterclaim. From the judgment of the trial court appeal comes to this court upon the question of law thus raised.

"In determining what has been decided," says Mr. Freeman (1 Freem. Judg. [4th ed.] § 258), "and what has, therefore, become a binding adjudication, the actual judgment of the court must be consulted, and, so far as it speaks, must be allowed to control." If this rule is to control, then it is evident that the trial court erred in giving judgment to the plaintiff, for the judgment in the City Court recites that "the court having instructed the jury that if they found that the defendant was entitled to the same amount as, or a greater amount than, that claimed by the plaintiff in his complaint from the defendant, they must render a general verdict for the defendant; and the court having further instructed the jury that the defendant was not entitled to recover in this action from the plaintiff a sum greater

than the amount of the funds in the defendant's hands on which he claims a lien, and the jury, after due deliberation, having, on the 17th day of November, 1892, rendered a general verdict for the defendant," etc. The counterclaim involved in that action exceeded the amount claimed by the plaintiff, and the verdict of the jury and the judgment based thereon went no further than to determine that the amount due the defendant was equal to or exceeded the amount claimed by the plaintiff. The defendants in this action are not here questioning any fact adjudicated in the previous action; they are rather in the position of holding that the jury, having previously determined that there was a sum due them equaling or exceeding the amount claimed by the plaintiff, they are entitled to the presumption that the jury reached the conclusion that they were entitled to the full amount of their claim, being ten per cent upon the amount collected, but that it was prevented from giving such a verdict by the instructions of the court. The doctrine of *res judicata* does not prevent the assertion of the facts established by the judgment in behalf of either party; it simply denies the right to bring the questions again into a position to be litigated, and this the defendants have not done. The judgment in the former action did not pretend to determine the amount due to the defendant's testator, except that it was equal to or in excess of the amount claimed by the plaintiff. All further consideration of the question was taken from the jury, and the judgment clearly indicates all that was decided. This, in our opinion, falls far short of establishing such an adjudication of the question now under consideration as to bar the counterclaim of the defendants.

In the case of *Campbell* v. *Consalus* (40 Barb. 509) the defendant executed a bond and mortgage for $1,200. This mortgage was assigned to A. L. Linn. Consalus commenced an action against Linn to cancel the mortgage, on the ground that it had been paid. The defendant denied payment and alleged that there was a large amount due. The case was sent to three referees, who took the evidence on the question of payment. They found that the mortgage had not been paid, but that the sum of $2,754.88 was due, and, as a matter of law, that the complaint should be dismissed, and it was dismissed, with costs. Subsequently the mortgage came into the ownership of Campbell, who commenced an action for its fore-

closure. The defendant set up payment, and the case was sent to a referee, who, after taking proof, reported that there was six cents due on the mortgage. From the finding and judgment the plaintiff appealed, it being insisted that the former judgment was conclusive as to the amount due upon the mortgage.. The referee overruled the position in that form, but held the former judgment conclusive only as to the fact that something — a nominal sum — was due; that the mortgage was not absolutely satisfied, but that it was no evidence whatever of the amount due. Commenting on these facts, in affirming the judgment, the court say: "It is true that the state of the accounts between the parties was examined — thoroughly examined — in the first suit. That was deemed necessary, probably, to ascertain whether anything was due. It is always necessary to a certain extent in such cases. Here the question may well have been so close, in the judgment of counsel, as to render that course indispensable. But the question is what was necessarily adjudged in that suit. That suit was not to redeem. * * * To enable the defendant in the first suit to succeed, and obtain the precise judgment he did obtain, it was only necessary for Linn to establish that the mortgage was not fully paid. The extent of the deficiency in payment was not material; so that if the plaintiff had proved that all was paid but ten dollars, the defendant in that suit might have rested, without any proof, with entire safety. The judgment would have been the same." Again the court say: "The doctrine of *res adjudicata* cannot extend beyond the judgment in the former case and the facts necessarily found in rendering that judgment. If I am correct in my reasoning, the amount due was not necessarily found, and hence that fact was not adjudged." So, in the case at bar, it was not necessary to determine in. the first action the amount due the defendant, but simply whether there was as much, or more, than the amount which he held and upon which he asserted a lien, and the court specially limited the jury to this proposition. This case was subsequently heard in the Court of Appeals (25 N. Y. 613, 616), where the court say: "Independent of the stipulation, it is quite plain that the proceedings and judgment in the prior action of Consalus against Linn was not conclusive in this action as to the amount due on the mortgage. To make such proceedings and judgment thus conclusive, it should

have appeared, not only that the amount due on the mortgage was litigated and found by the referees in such prior action, but it should also have appeared, by the record of the judgment in such prior action, that the amount due on the mortgage was put in issue by the pleadings in such prior action."

In the case of *House* v. *Lockwood* (137 N. Y. 259, 268) this case is quoted with approval and the same doctrine is asserted, the facts being too complicated for convenient or concise statement. The court say : " The general doctrine of *res adjudicata* is well understood. The rule is founded upon convenience and public policy. Issues which the parties have submitted to a court of competent jurisdiction and had determined are put at rest, and are not to be reopened and relitigated, and their adjudication is conclusive in all subsequent controversies between them where the same matter comes again directly in question." That is, in the case at bar, the plaintiff would not be permitted to question the judgment in so far as it determined that there was due to the defendants an amount equal to the sum claimed in the previous action by the plaintiff, for that was the exact question which was submitted to the jury and determined. To attempt to say, however, that the defendants are estopped from asserting the balance of their claim as a counterclaim in an action by the plaintiff to recover moneys in their hands, is such a substantial denial of justice, and is so contrary to the true purposes of the doctrine of *res adjudicata*, that it can find no sanction in this court. " But," say the court in *House* v. *Lockwood* (*supra*), " it has never been held that a judgment is an estoppel as to all the litigated facts and all the evidence which the one party or the other may choose to introduce upon the trial of the action, however important such evidence may have been. The estoppel extends to the material facts which are in issue between the parties to the action, and to such as necessarily bear upon, control and are essential to the adjudication made." If the same evidence is necessary to establish the balance of the defendant's counterclaim which was necessary to establish the lien in the former action, we find no authority which would deny the right to submit that evidence. They do not bring into controversy the question previously litigated, but simply use the same evidence to show that the claim has been only partially liquidated. The question of how much was due to

the defendants has never been litigated, and it would be unjust to them to say that because the plaintiff was in a position where an affirmative judgment could not reach him, the defendants shall not have the right to have the amount determined for the purpose of defeating the claim of the plaintiff against them. (Code Civ. Proc. § 503.)

" The principle upon which judgments are held conclusive upon the parties," says Herman's Law of Estoppel (§ 39), "requires that the rule should apply only to that which was directly in issue, and not to everything which was incidentally brought into controversy during the trial." This doctrine is recognized and approved in *Shaw* v. *Broadbent* (129 N. Y. 114); in *Unglish* v. *Marvin* (128 id. 380, 386), and in *Nelson* v. *Brown* (144 id. 384, 389).

In the case of *Butler* v. *Wright* (2 Wend. 369, 374) the plaintiff, as indorser of a promissory note, made certain payments on the same, aggregating some $380. He brought an action in assumpsit against the defendant, the first indorser, and recovered. Subsequently he made other payments and brought a second action, and it was urged that the judgment in the former action upon the same claim was a bar to recovery. The court say : "The former recovery can be no bar to the present action, although the evidence in both was in part the same. It was necessary in both suits, in order to entitle the plaintiff to recover, to shew that the defendant had been charged as endorser by a regular demand of the maker, and notice to the defendant of non-payment. This evidence was indispensable to make out the fact that in judgment of law the money was paid for his use, for unless he was charged as endorser the payment was not for his use or benefit. But the recovery was not upon the note for it did not belong to the plaintiff, but was simply for the money paid by him ; so in this action the plaintiff seeks to recover other money paid by him since the commencement of the first suit, and which, of course, could not have been embraced in the first judgment.

" The case of *Phillips* v. *Berick* (16 Johns. R. 136) decides that the record of a former recovery, apparently for the same cause of action as that which is the foundation of a subsequent suit, is *prima facie* evidence only that the *demand* had been once tried, and the plaintiff may repel it by shewing that it was a distinct demand, in relation to which no evidence had been offered in the former cause, and that it arose out of a distinct transaction."

In the case at bar, it is true, evidence was originally offered as to the entire amount of the claim, and the present counterclaim is a part of the original claim; a part of which has been adjusted; this is due to no fault of the defendants, but to the fact that in the original action the recovery of the defendant was necessarily limited to the amount which he then held and against which he asserted a lien as well as a counterclaim. (See *Sewall* v. *Robbins*, 139 Mass. 164.)

In *Sage* v. *McAlpin* (11 Cush. 165, 166) the court say: "The record of a judgment in a former suit is not always competent evidence on the trial of a subsequent action between the same parties, but is so only when the point in issue is the same in both or when some question raised, and to be passed upon in the last, has already arisen and been determined in the first. * * * Did a reasonable time extend to and include the 22nd of January, was the only question which arose or was determined in the first, but in the second the inquiry and point in issue was, if it extended two days further and included also the twenty-fourth. It was a question of fact to be ascertained and determined in each case from all the evidence produced and all the circumstances disclosed at the respective trials."

So, in the case at bar, the question on the first trial was whether the plaintiff owed the defendant an amount equal to or exceeding the sum claimed by the plaintiff; the question now involved is whether the defendants are entitled to recover that portion of the claim in excess of the former recovery which could not be adjudicated in the first trial.

In *Burlen* v. *Shannon* (99 Mass. 200, 205) the court reviews the Massachusetts cases and quotes from the chief justice in the same case (14 Gray, 439) as follows: "The parol evidence was rightly admitted to ascertain what questions were in fact tried and submitted to the jury. This evidence showed that two such questions were submitted; that if either of two things were true they would return a verdict for the plaintiff. A verdict on that direction for the plaintiff proved nothing more than that the jury found one of the propositions true, but without finding which." The court then adds: "The whole current of our own decisions fully supports the limitations of the doctrine of estoppel which we now sanction and adopt." To the same effect is the case of *Duncan* v. *Bancroft* (110 Mass. 267), though not so clearly stated. (See, also, *Sewall* v. *Robbins, supra; Hymes* v. *Estey,* 116 N. Y. 501, 509.) Reason, justice

and the authorities concur in the conclusion that the trial court erred in its conclusion of law.

A serious question in this case, however, is whether the defendant could split up his counterclaim or set off. A counterclaim, in most respects, is to be treated as an affirmative action on the part of the defendant. The rule is well settled that a party cannot split up an entire cause of action and maintain several actions, each for part of his demand. The recovery of one judgment bars his whole claim. There is some authority to the effect that the same rule applies to a counterclaim. It was so held by the late General Term of the first department in *Inslee* v. *Hampton* (11 Hun, 156), and also by the Superior Court of New York in *De Wolf* v. *Crandall* (2 J. & S. 14). In *O'Connor* v. *Varney* (10 Gray, 231), Varney made a contract to erect a building. He sued for work done under the contract, to which O'Connor set up that the work was so imperfectly done that it would require a greater sum than the amount sued for to complete the contract. O'Connor recovered judgment in that action, and thereupon brought an action against Varney to recover damages for the non-performance of the contract. It was held that the judgment in the first action was a bar to the second ; that if the defendant in the first action claimed greater damages than the amount for which the plaintiff sued, he should have stayed the first action and brought his cross-action. It was there said : "He cannot use the same defence, first as a shield, and then as a sword." In the American and English Encyclopædia of Law, subject *Res Judicata* (Vol. 21, p. 224), it is said : "A set-off cannot be split up so as to have a portion adjudicated in the first suit and a subsequent action brought for the remainder." But the authorities cited in the work in support of its text seem hardly to go to this extent. In all the cases cited, however, the defendant might have had full relief by seeking a judgment in his own favor ; and the question still remains whether the rule is applicable to cases where the defendant necessarily is confined in the use of his set-off or counterclaim to a defeat of the plaintiff's demand, and is not permitted to obtain an affirmative judgment. From an early period in the legislation of our State assignments of choses in action have been permitted, and the assignee authorized to sue in his own name ; but such assignments have been made subject to any counterclaim or defense existing against the

assignor at the time of the assignment. When an assignee sues on a claim he may be defeated in the claim on account of some set-off in favor of the defendant against his assignor, but, of course, he is not subject to the additional misfortune of having an affirmative judgment rendered against him for his assignor's debt. A set-off can only be used to the extent of defeating the plaintiff's claim. (*Kast* v. *Kathern*, 3 Den. 344.) In the case cited the Supreme Court reversed so much of a judgment as gave the defendant an affirmative recovery. Judge JEWETT there said : "What remedy a defendant has under such circumstances to recover the balance due to him over the plaintiff's debt is not very apparent. None is provided by statute." We do not think, however, that any provision by statute is necessary. If A., being of doubtful solvency, has a claim against B., which he transfers to C. at a time when he is indebted to B. in many times the amount of his own claim against B., why should B. be compelled to either sacrifice the whole excess of indebtedness due from A. to him in case he interposes that indebtedness as a set-off in the suit of C. or to pay C. in full and run the risk of recovering nothing from A. on account of his insolvent condition ? Or suppose A., being wholly insolvent and having many small claims against B., should assign such claims to many different persons while B. held but a single demand against A. far exceeding the aggregate amount of the small claims. In such a case the injustice of the rule would be still greater, and if the rule obtains at all I do not see how B. could obtain relief in equity. It seems to me that wherever the defendant cannot obtain affirmative judgment from the plaintiff he has the right to split his set-off, and that his recovery in such an action only extinguishes his set-off to the amount of the plaintiff's claim. This double suit on the same claim is not an anomaly in legal procedure. It certainly at one time obtained in England, and I think is still the practice. It was held in *Hennell* v. *Fairlamb* (3 Esp. 104) that where a party in a previous action had interposed a set-off for more than the plaintiff's claim and succeeded on that set-off, he might bring another action for the surplus. I think the same rule should apply in this case, and that the judgment should be reversed.

Judgment reversed and new trial granted, costs to abide the event.

All concurred.

Judgment reversed and new trial granted, costs to abide the event.