## LANDON v. CLARK et al.

(Circuit Court of Appeals, Second Circuit. January 15, 1915.)

No. 94.

1. JUDGMENT ⊜⟶720—RES JUDICATA—MATTERS NOT IN ISSUE.

A judgment does not operate as an estoppel as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided; and to render a judgment conclusive in a subsequent action between the same parties or their privies, but on a different cause of action, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried and determined.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig. ⊜⟶720.]

2. JUDGMENT ⊜⟶747—RES JUDICATA—MATTERS NOT IN ISSUE.

In a suit to enjoin repeated trespasses on a pond, there was a finding that the alleged trespasses were committed only on a particular portion of the pond, and that the title to the land under such portion was in defendant, and there was a decree in his favor. *Held*, that a further finding defining his boundary on the pond, without reference to such particular portion, was without the issues and irrelevant, and would not support a suit by the defendant or his successor in title against the complainants to quiet title to the portion of the pond within such boundary.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1053, 1284–1296; Dec. Dig. ⊜⟶747.]

3. JUDGMENT ⊜⟶951—MATTERS CONCLUDED—EVIDENCE.

Evidence of remarks made by a trial judge is not admissible in another suit to show the grounds of his decision.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1808–1812; Dec. Dig. ⊜⟶951.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the United States District Court for the Southern District of New York, which decree was entered on March 23, 1914, and which adjudged that the defendants did not have, either of them, any estate, right, title, or interest whatever in certain lands and premises described in the bill of complaint, and enjoining them from asserting any claim in the said lands adverse to the complainant. Thomas Durland Landon, the plaintiff herein, is a resident of Bordentown, in the state of New Jersey. Elizabeth Clark and Mary F. Clark, the defendants herein, are residents of the town of Warwick, county of Orange, and state of New York.

See, also, 187 N. Y. 560, 80 N. E. 1107.

Thomas Watts and Elbert N. Oakes, both of Middletown, N. Y. (John Bright, of Middletown, N. Y., of counsel), for appellants.

M. N. Kane, of Warwick, N. Y. (John J. Beattie, of Warwick, N. Y., of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. [1] The plaintiff seeks to quiet title to certain real estate which he claims to own in fee simple and to have in possession, and which is under water, known as Wickham's Pond,

in the town of Warwick, in the county of Orange, and state of New York. The plaintiff derives title through a deed made June 30, 1906, by Jesse Durland conveying to Thomas D. Landon in fee simple 650 acres of land, more or less, describing the same by metes and bounds and adding:

"And also all the lands under water belonging to said Durland in what is known as Wickham's Pond in said town being all the lands and premises owned by the said party of the first part in the said town of Warwick."

To show title in Jesse Durland, plaintiff relies upon an action brought in the courts of the state of New York by Elizabeth Clark and Mary F. Clark (defendants in the case at bar) against Jesse Durland, in which action the present plaintiff claims it was adjudged and decreed that the defendants had no right, title, or interest in the lands described in the bill of complaint, and that Jesse Durland's title was good and valid. The claim is that, as between the defendants in the present suit and the plaintiff, who is the successor to the title of Jesse Durland, the title to the land in suit has been authoritatively determined by the action of the New York courts, and that the matter is res judicata, and justifies this court, without further proof of title in plaintiff, ordering a decree entered quieting the title.

It appears that Elizabeth Clark and Mary F. Clark commenced an equitable action in the Supreme Court of the state of New York to restrain certain alleged trespasses which Jesse Durland had committed and induced others to commit at various times "from year to year for many years past," and which he threatened to continue whenever and at such times as he should choose or desire. The plaintiffs alleged in their bill that they were seised and in possession "of certain lands and premises in the town of Warwick, in said county, partly covered by water and commonly known as Wickham's Pond or Clark's Lake, bounded and described as follows." Then followed a description of Wickham Pond by metes and bounds, and which embraced all the land covered by the waters of the pond. The bill further alleged ownership of a 200-acre farm adjoining the pond, "the value of which," so the bill alleged, "is greatly enhanced by the ownership and peaceable possession of the premises above described." The bill went on to allege various trespasses committed by Durland upon "the premises above described, known as Wickham Pond." It demanded judgment that Durland, his servants, and employés "be forever enjoined and restrained from entering upon the premises above mentioned and described, known as Wickham's Pond or Clark's Lake, and from doing or performing any other act or thing in relation thereto derogatory to the title of the plaintiffs therein." It thus appears that in that suit the present defendants, as plaintiffs, alleged title not to any limited or specified part of Wickham Pond, but asserted exclusive and sole ownership to the whole and every part thereof, and prayed for an injunction excluding the defendant from the whole and every part of the pond. The defendant, Durland, in his answer set up that he had never claimed title to the whole of the lake, admitted that he had entered upon a certain part of the lake and had cut and taken away ice therefrom, and averred "that he had the right to so cut and carry away said ice." He also alleged that "he is the

owner of a farm bordering upon and surrounding to a considerable extent said Wickham's Pond, and is the owner of a certain portion of said Wickham's Pond." He denied each and every allegation in the complaint which the answer had not specifically admitted. The court in its judgment decreed:

"That the defendant is, and was at the commencement of this action, seised in fee of that portion of said Wickham's Pond shown on the map by A. R. Taylor, surveyor, running through said pond on a course south 88½ degrees east from the east line of the homestead farm to a stake in the center of a ditch or inlet of Wickham's Lake."

The land thus described in the judgment is the precise tract of land involved in the present suit, and is described in the bill of complaint in the identical language of the judgment. The defendants, while conceding that the land involved in the case at bar is the land described in the judgment, assert that the judgment is not res judicata as the finding as to the title by the New York courts was not necessary to the decision of the case, and they claim that a judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided. The question, therefore, which we have to consider upon this appeal, is whether the judgment entered in the action brought in the New York courts by these defendants against this plaintiff's predecessor in title is conclusive as between the parties to the present suit as respects the title now sought to be quieted.

The doctrine of res judicata is that a fact which was actually in issue in a former suit, in which it was judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment so far as concerns the parties to the action and their privies. It cannot be litigated again in any future action between the same parties or their privies, either in the same court or in any other court of concurrent jurisdiction, upon the same or upon a different cause of action. The doctrine is based upon the theory that private right and public welfare demand that a question once adjudicated by a court of competent jurisdiction should be considered, except in direct proceedings to review, as forever conclusive upon the parties. "Interest reipublicæ ut sit finis litium."

The principle of res judicata is an old one in our jurisprudence. It is not only a cardinal principle of the common law, but it is one established in all civilized systems of jurisprudence. "Res judicata pro veritate accipitur" was the well-known maxim of the Roman law by which a judgment was binding and conclusive upon the parties, and could not be contradicted or impeached by them as to a right or a fact which had been judicially tried and determined by a court of competent jurisdiction. Of such a matter it was said "transit in rem judicatum." In the trial of the Duchess of Kingston in Westminster Hall in full Parliament assembled in 1776, the defense in that great case turned upon the effect of a sentence rendered in the Ecclesiastical Court and which was claimed to be a conclusive bar to the suit then pending. Chief Justice De Grey declared the rule to be that:

"The judgment of a court of concurrent jurisdiction, directly upon the point, is as a plea a bar, or as evidence conclusive, between the same parties upon the same matter, directly in question in another court."

The doctrine applies to judgments at law and to decrees in equity. And a point which has been litigated and determined in a state court cannot be again drawn in question between the parties or their privies in a federal court, but must receive the same faith and credit there which would be accorded to it in the courts of the state where it was rendered.

The case of Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195 (1876), is regarded as the leading case among those decided in the Supreme Court of the United States upon this subject. The matter is there very fully considered and the English cases are examined. Mr. Justice Field, writing the opinion of the court, states the law as follows:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery and defense actually presented in the action, but also as to every ground that might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever. But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

See, also, Packet Company v. Sickles, 5 Wall. 580, 592, 18 L. Ed. 550 (1866); Fayerweather v. Ritch, 195 U. S. 276, 25 Sup. Ct. 58, 49 L. Ed. 193 (1904).

The cases in the Supreme Court show that the judgment in the first action is res judicata only as to the point actually litigated and determined when the second action is upon a different claim or demand. The law is laid down in the same manner by the New York Court of

Appeals in House v. Lockwood, 137 N. Y. 259, 267, 33 N. E. 595, 597 (1893), in an opinion written by Judge Earl in which it is said:

"The findings of fact are against the plaintiff, and unless they can be successfully assailed his complaint was properly dismissed upon the merits. He contends that the prior adjudication in the action of Mrs. Lockwood against him is conclusive upon the defendants in this action, and conclusively establishes that he took the deed as security, and that, although absolute in form, it is a mortgage. The important matter, therefore, in this case is to determine the force and effect to be given in this action to that prior adjudication. As the defendants claim that Mrs. Lockwood was and is the real owner of the property, they are both bound by whatever was really adjudicated in the prior action. The general doctrine of res adjudicata is well understood. The rule is founded upon convenience and public policy. Issues which the parties have submitted to a court of competent jurisdiction and had determined are put at rest, and are not to be reopened and relitigated; and their adjudication is conclusive in all subsequent controversies between them where the same matter comes again directly in question. But the rule is not always easy of application, and there are qualifications to it which must be carefully noticed. The rule, with its qualifications, is very well stated in the brief of the learned counsel for the appellant in this action, as follows: 'A judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial or unessential facts, even though put in issue by the pleadings and directly decided. But it is final as to every fact litigated and decided therein, having such a relation to the issue that its determination was necessary to the determination of the issue. Whenever the same question arises between the parties, in whatever form of action, and whether involved directly or collaterally, they are forever precluded from averring and proving the fact to be otherwise.' "

An illustration of the principle involved is found in Mitchell v. Insley, 33 Kan. 654, 7 Pac. 201 (1885). In an action of ejectment, plaintiff relied upon what purported to be a warranty deed. The defendant showed that the deed was given to secure a debt and was in fact a mortgage. The court found that the deed was in effect a mortgage to secure the payment of $2,000 and that no part of the mortgage had been paid and rendered judgment for defendant. In a subsequent action to foreclose the deed as a mortgage, it was held that the defendant in the ejectment action was not estopped from contesting the amount due on the mortgage by the findings and judgment of the former action. The finding that no part of the money had been paid was not necessarily involved in the issues, or included in the judgment, and the adjudication upon that point in the ejectment action was not conclusive in the foreclosure suit. The court said:

"It is the general duty of the court trying a case to find upon all the issuable facts; yet findings which are not necessarily included in and become a part of the judgment are not conclusive in other actions. Even where such findings are confirmed by final judgment, they are adjudications only so far as they are necessarily included in and become a part of the judgment."

And see Auld v. Smith, 23 Kan. 65.

[2] The former action was brought to restrain a trespass. The present suit is to quiet title. The judgment in the first action is not pleaded as a bar to the present suit. It is, however, offered in evidence in the second suit as conclusive upon the question of title. In such a case it is not necessary that the two suits should be founded on the same cause of action. The record is admissible, no matter how wide may be the difference between the two causes of action, provided the special

point sought to be concluded was actually a matter in issue in the earlier suit and was there litigated and decided. Black on Judgments (2d Ed. 1902) § 726.

As already stated the judgment rendered in the first action found title in fee to the very lands herein involved to be in the defendant, and it is that exact title to which plaintiff in the present suit has succeeded that he seeks to have quieted in this suit. The defendants in their answer, however, assert that the title to all the land under the waters of Wickham's Pond which belongs to defendant was not actually at issue in the former action, and that no such question was pertinent, relevant, or necessary for the determination of that action, and that the court rendering the judgment had no jurisdiction to determine such title in that action. The answer, speaking of the first action, alleges:

"That the same was an action brought in trespass and to restrain certain threatened trespass by said Jesse Durland upon said 8.7 acres and upon no other portion of said lake, and the sole question actually litigated and determined in said action was that Jesse Durland had not trespassed upon said 8.7 acres because title thereto was shown to have been in said Durland," and that said judgment was not determinative of any of the questions sought to be determined in this action.

The court below did not sustain defendants' claim, and when they offered at the trial to introduce in evidence the opinions of the Appellate Division of the Supreme Court of New York to show the exact question which was decided in that action, as well as certain deeds and other evidence for the purpose of showing title in defendants, the offer was refused upon the theory that the question of the title was no longer open to consideration. Did the court fall into error in holding the judgment in the first action conclusive as to the title which is now sought to be quieted? At first blush it might appear that error was not committed. The plaintiffs in the first action asserted title to the whole lake, and it might be thought that the trial court was fully justified in entering the judgment which it did. But we must remember the principle laid down by the New York Court of Appeals in House v. Lockwood, supra, that a judgment does not operate as an estoppel as to immaterial or unessential facts even though put in issue by the pleadings and directly decided.

The trial court found as a fact that title to a tract of land under water amounting to 8.7 acres was in defendant and that the acts of alleged trespass were committed upon that tract. There is no finding that acts of alleged trespass were committed on any other portions of the pond, but there are additional findings as to the title to other portions of the pond, and each of the additional findings declares title vested in defendant to portions of the pond without distinct reference to the 8.7 acres upon which the acts complained of were found to have been committed. And the last of these findings as to title is in the exact language which the plaintiff in the present suit sets up in his complaint in stating the title which he seeks to have quieted and which presumptively includes all the land under the waters of the pond that the plaintiff claims. If the finding as to title had not been separated into several distinct findings, but had been confined to the comprehensive statement embodied in the last finding, the plaintiff might have in-

sisted that it conclusively determined the question of title as between the parties and their privies. But unfortunately for him this course was not followed, and when the court found that the trespasses were committed upon the 8.7-acre tract, and found title to that tract in defendant, everything else which it subsequently found was unessential and not at all necessary to the decision of the case. Upon the first findings alone the defendant was entitled to have the bill dismissed, even if the title to every other portion of the lake had been found to have been in the plaintiffs in that action. The distinct findings as to the title to the other portions of the lake not trespassed upon were therefore not involved, and are to be regarded as obiter. For, as said in Russell v. Place, 94 U. S. 606, 608, 609, 24 L. Ed. 214 (1876), in full accord with other decisions of the Supreme Court of the United States already cited and with the New York Court of Appeals in House v. Lockwood, supra:

"To render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined—that is, *that the verdict in the suit could not have been rendered without deciding that matter;* or it must be shown by extrinsic evidence, consistent with the record, that the verdict and judgment necessarily involved the consideration and determination of the matter."

Certainly it cannot be claimed that any of the several findings as to the title made by the trial court in the former action, other than that relating to the title to the tract of 8.7 acres was necessary to the decision of the question involved. A judgment could have been rendered and the bill dismissed, without reference to whether or no title as to the other portions of the lake was or was not in the defendant in that action. If, however, the record disclosed that title to the tract of 8.7 acres had been derived from the same common source, and had been dependent upon the existence or nonexistence of the same fact or facts as the title to the remaining tracts, then the finding as to the title to the tract of 8.7 acres would have been conclusive as to the whole. See Southern Pacific Railroad v. United States, 168 U. S. 1, 54, 18 Sup. Ct. 18, 42 L. Ed. 355 (1897). But the title to the 8.7 acres evidently involved a question distinct from that involved as to other portions of the defendant's land. We have reached this conclusion solely upon what is in the present record as to what took place in the Supreme Court of New York in which the former action was tried.

This court, however, can take judicial notice of the statutes of the state of New York and of its official reports, and we have examined the opinions rendered in the higher courts of the state respecting the judgment which has been pleaded in the present suit. When the case was before the Appellate Division the first time, the court said:

"The defendant, whose title descends from Thomas E. Durland, being the owner in fee of the lands under water in that portion of Wickham's Pond where the trespass is alleged to have occurred, and where the defendant has for a long series of years cut ice for storage, the plaintiffs have failed to establish their right to the injunction granted by the trial court. We have not thought it necessary to go into the discussion of adverse possession, because it clearly appears that the defendant has a complete title to so much of the pond as is necessary for his own convenience, as good a title as the plaintiffs would have if the findings of the trial court were warranted by the evidence;

*and it is not necessary to extend the inquiry further.*" 35 App. Div. 312, 320, 321, 55 N. Y. Supp. 14, 20 (1898).

When the case came before that court a second time, it affirmed the judgment in a per curiam opinion which was confined to a consideration of the title to the tract of 8.7 acres. 104 App. Div. 615, 93 N. Y. Supp. 249 (1905). And that decision was affirmed in the Court of Appeals without an opinion. 187 N. Y. 560, 80 N. E. 1107 (1907).

[3] It is assigned as error that in the court below defendant was not permitted to show certain remarks made by the trial judge in the action in the state court to the effect that he saw nothing in the case except the location of the eight and a fraction acres upon which the trespass was proven to have been committed. There was no error in excluding that testimony. In Packet Company v. Sickles, supra, the Supreme Court of the United States held that, while in some cases evidence outside the record might be introduced to show what particular question was tried and determined in the former suit, it would, nevertheless, be improper to permit the jurors on the former trial to testify as to the particular ground upon which they found their verdict. And in Fayerweather v. Ritch, supra, the same court applied the same principle of exclusion to the testimony of the trial judge as to what he had in mind at the time of the decision.

The decree should be reversed, and the bill of complaint dismissed without prejudice; and it is so ordered.